**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

DAVID ABELLARD JR.,
an individual,

      Plaintiff,                      Case No.:

-v-                                  Jury Trial Demanded

WELLS FARGO BANK, N.A.,
a national association bank,

      Defendant.

_____/

## COMPLAINT

**COMES NOW** Plaintiff, David Abellard Jr., and hereby sues Defendant, WELLS FARGO BANK, N.A. (hereinafter, "WELLS FARGO" or "Defendant"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 et seq. ("FCCPA").

## INTRODUCTION

1. The TCPA was enacted to prevent companies like WELLS FARGO from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137

Cong. Rec. 30, 821 (1991).   Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC.  There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones, Federal Communications Commission, (May 27, 2015), http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Thirty Thousand Dollars ($30,000.00), exclusive of attorneys' fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8. The alleged violations described herein occurred in Broward County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9. Plaintiff is a natural person, and citizen of the State of Florida, residing in Broward County, Florida

10. Plaintiff is a "consumer" as defined in Florida Statutes § 559.55(8).

11. Plaintiff is an "alleged debtor."

12. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13. Defendant, WELLS FARGO, is a Corporation and National Association with a principal place of business located at 420 Montgomery Street, San Francisco, CA 94163 and which conducts business in the State of Florida.

14. The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statutes § 559.55(6).

15. WELLS FARGO is a "creditor" as defined in Florida Statutes § 559.55(5)

16. WELLS FARGO called Plaintiff on his cellular telephone *at least* twenty-two (22) times on or before August 15, 2018 through August 28, 2018, in an attempt to collect a consumer debt.

17. WELLS FARGO attempted to collect consumer debt, as that term is defined by the FCCPA, from Plaintiff.

18. Upon information and belief, all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the

capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

19. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (561) ***-6538, and was the called party and recipient of Defendant's calls.

20. Beginning in or around June and July 2018, WELLS FARGO began calling Plaintiff's cellular telephone (561) ***-6538.

21. Defendant knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calling his cellular telephone number nearly every day and sometimes up to two (2) times a day.  Defendant's calls, which were conducted June/July 2018 through August 28, 2018, occurred with such frequency as can reasonably be expected to harass Plaintiff, all in an effort to collect debt.

22. On or about July 22, 2018, Plaintiff first requested Defendant to stop calling his cell phone by orally stating "please do not call this number" during a conversation with a Wells Fargo representative named "Tanor."  Plaintiff also revoked consent on calls with representatives named "AJ" and "Tenia."

23. Each of the auto-dialer calls Defendant made to Plaintiff's cellular telephone after July 22, 2018 were done so after Plaintiff explicitly revoked consent.

24. The auto dialer calls from Defendant came from certain telephone numbers, including but not limited to, (800) 988-8019), and when that number is called a pre-recorded voice states "Welcome to Wells Fargo, to get started, please key your card number…."

25. Despite Plaintiff's requests for the calls to stop, Defendant continued to auto-dial Plaintiff.

26. Plaintiff received an estimated twenty-two (22) calls from Defendant between the time he initially revoked consent to be called on or about July 22, 2018 and the time Defendant finally honored his request to stop calling his cell phone on or about August 28, 2018.

27. Despite Plaintiff informing Defendant to stop calling, Defendant still called Plaintiff repeatedly between August 15, 2018 and August 28, 2018.

28. WELLS FARGO has a corporate policy to use an automatic telephone dialing system and/or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case.

29. WELLS FARGO has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, to remove the number from Defendant's dialer.

30. WELLS FARGO's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to WELLS FARGO they wish for the calls to stop.

31. WELLS FARGO has numerous other state and federal lawsuits pending against it alleging similar violations as stated in this Complaint.

32. WELLS FARGO has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite numerous requests to stop.

33. WELLS FARGO has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call those consumers.

34. WELLS FARGO's corporate policy provided no means for Plaintiff to have his number *timely* and immediately removed from Defendant's call list and dialer.

35. WELLS FARGO has a corporate policy to harass and abuse individuals despite actual knowledge that the called parties do not wish to be called.

36. Not a single call placed by WELLS FARGO to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

37. Here, WELLS FARGO willfully and/or knowingly violated the TCPA with respect to Plaintiff's cell phone. This also impaired the usefulness of certain features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

38. From each and every call placed without consent by WELLS FARGO to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

39. From each and every call without express consent placed by WELLS FARGO to Plaintiff's cell phone, Plaintiff suffered the injury of occupation of his cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from WELLS FARGO's calls.

40. From each and every call placed without express consent by WELLS FARGO to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time.  For the calls Plaintiff answered (or tried to answer), the time Plaintiff spent on the call was unnecessary as Plaintiff repeatedly asked for the calls to stop.  Even for unanswered calls, Plaintiff had to waste time to unlock his phone and deal with missed call notifications and call logs that reflected the unwanted calls.  This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

41. Each and every call placed without express consent by WELLS FARGO to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance.  Even for unanswered calls,

Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls.

42. Each and every call placed without express consent by WELLS FARGO to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

43. Each and every call placed without express consent by WELLS FARGO to Plaintiff's cell phone where a voice message was left occupied space in Plaintiff's phone and/or network.

44. Each and every call placed without express consent by WELLS FARGO to Plaintiff's cell phone resulted in the injury of a trespass to his chattel, namely his cellular phone and his cellular phone services.

45. As a result of the answered and unanswered calls described above, Plaintiff suffered an invasion of privacy.  Plaintiff was also affected in a personal and individualized way by stress, anxiety, nervousness, embarrassment, distress, and aggravation.  Due to both answered and unanswered calls, Plaintiff suffered the expenditure of his time, exhaustion of his cellular telephone battery, unavailability of his cellular telephone while ringing, waste of his time, causing the risk of personal injury due to distraction, and trespass upon his chattels.  All of the abovementioned were caused by, and/or directly related to, Defendant's attempts to collect an alleged debt from Plaintiff through the use of automated/predictive dialing technology after Plaintiff explicitly revoked consent.

### COUNT I
### (Violation of the TCPA)

46. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-five (45) as if fully set forth herein.

47. WELLS FARGO negligently and/or willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified WELLS FARGO that he wished for the calls to stop.

48. WELLS FARGO repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against WELLS FARGO for statutory damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

49. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-five (45) as if fully set forth herein

50. WELLS FARGO violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

51. At all times relevant to this action WELLS FARGO is subject to and must abide by the laws of the State of Florida, including Florida Statutes § 559.72.

52. WELLS FARGO violated Florida Statute § 559.72(7) by willfully engaging in conduct which can reasonably be expected to abuse or harass Plaintiff – namely, repeatedly and continually harassing Plaintiff with unwanted auto-dialed collection calls after Plaintiff requested that such calls stop.

53. WELLS FARGO's actions directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statutes § 559.77.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against WELLS FARGO for statutory damages, punitive damages, actual damages, costs, interest, enjoinder from further violations of these parts, attorneys' fees and costs, any other such relief the court may deem just and proper.

DATED THIS 11th day of January 2019.

Respectfully submitted,

**SWIFT, ISRINGHAUS & DUBBELD, P.A.**

/s/ *Aaron M. Swift*
**Aaron M. Swift, Esq., FBN 93088**
**Jordan T. Isringhaus, Esq., FBN 91487**
Swift & Isringhaus, P.A.
10460 Roosevelt Blvd. N., Suite 313
St. Petersburg, FL 33716
Phone: (727) 490-9919
Fax: (727) 255-5332
aswift@swift-law.com
*Attorneys for Plaintiff*