UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-60099-BLOOM/Valle

DAVID ABELLARD, JR.,

    Plaintiff,

v.

WELLS FARGO BANK, N.A.,

    Defendant.
_____/

**ORDER ON MOTION TO COMPEL ARBITRIATION AND DISMISS OR STAY CASE**

**THIS CAUSE** is before the Court upon Defendant Wells Fargo Bank, N.A.'s Motion to Compel Arbitration and Dismiss or Stay Case, ECF No. [17] (the "Motion"). Plaintiff David Abellard, Jr. ("Plaintiff" or "Abellard") filed a response, ECF No. [22] ("Response"), to which Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") filed a reply, ECF No. [23] ("Reply"). The Court has carefully considered the Motion, all opposing and supporting submissions, the record in this case and the applicable law, and is otherwise advised in the premises. For the reasons set forth below, the Motion is granted.

    **I.    BACKGROUND**

In this case, Abellard alleges that Wells Fargo violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55, *et seq.*, when Wells Fargo contacted Abellard on his cell phone at least twenty-two times between approximately August 15, 2018 through August 28, 2018, in attempts to collect on a consumer debt. ECF No. [1] ("Complaint"), ¶¶ 16, 26. According to the Complaint, Abellard requested that Wells Fargo stop calling his cell phone on or about July 22, 2018, but despite several

additional requests, the calls continued. *Id*. ¶¶ 22-23, 25. As a result, Abellard asserts two claims against Wells Fargo, for violation of the TCPA and the FCCPA. In the instant Motion, Wells Fargo requests that the Court compel arbitration in this case pursuant to two agreements between the parties containing arbitration clauses.

## II. LEGAL STANDARD

The presence of a valid arbitration provision raises a strong presumption of enforcement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630-31 (1985) (stressing that the enforcement of a mutually agreed upon arbitration or forum-selection serves as an "indispensable precondition to the achievement of the orderliness and predictability essential to any international business transaction"). Indeed, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* "embodies a 'liberal federal policy favoring arbitration agreements.'" *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1357-58 (11th Cir. 2002) *abrogated on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs*, 134 S. Ct. 773 (2014) (quoting *Mitsubishi Motors*, 473 U.S. at 625-26); *Hemispherx*, 553 F.3d at 1366 ("The role of the courts is to rigorously enforce agreements to arbitrate.") (internal citation and quotation omitted). Under the FAA, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

When presented with a motion to compel arbitration, a district court will consider three factors: (1) whether a valid agreement to arbitrate exists, (2) whether an arbitrable issue exists, and

(3) whether the right to arbitrate was waived. *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010) *aff'd*, 433 F. App'x 842 (11th Cir. 2011); *see also Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004) (citing *Marine Envtl. Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003); and *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999)) ("Under both federal and Florida law, there are three factors for the court to consider in determining a party's right to arbitrate: (1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived."). "A plaintiff challenging the enforcement of an arbitration agreement bears the burden to establish, by substantial evidence, any defense to the enforcement of the agreement." *Inetianbor v. CashCall, Inc.*, 923 F. Supp. 2d 1358, 1362 (S.D. Fla. 2013).

"By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in original). Thus, if the aforementioned criteria are met, the Court is required to issue an order compelling arbitration. *John B. Goodman Ltd. P'ship v. THF Const., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, 9 U.S.C. § 1 *et seq.*, a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute."). Through this lens, the Court considers the instant Motion.

### III. ANALYSIS

In the Motion, Wells Fargo argues that Abellard should be compelled to arbitrate his claims because both the Personal Loan Agreement he signed and the Consumer Credit Card Customer Agreement governing his credit card account contain arbitration provisions. Moreover, Wells Fargo contends that Abellard stopped making payments on both his personal loan and credit card

accounts, and he was contacted regarding his accounts on the phone number he provided on both applications for those products. ECF Nos. [17-1], ¶¶ 5, 11; [17-6], ¶¶ 3, 5.

The Consumer Credit Card Customer Agreement states, in pertinent part, as follows:

a. <u>Binding Arbitration</u>. You and Wells Fargo Bank, N.A. (the "Bank") agree, that if a Dispute arises between you and the Bank, upon demand by either you or the Bank, the Dispute shall be resolved by the following arbitration process. [. . .] A "Dispute" is any unresolved disagreement between you and the Bank. It includes any disagreement relating in any way to the Card or related services, Accounts, or matters; to your use of any of the Bank's banking locations or facilities; or to any means you may use to access the Bank. It includes claims based on broken promises or contracts, torts, or other wrongful actions. It also includes statutory, common law, and equitable claims. "Disputes" include disagreements about the meaning or application of this Arbitration Agreement.

ECF No. [17-4] at 14.[1] In addition, the Personal Loan Agreement contains a similar arbitration provision, which states,

a. <u>Binding Arbitration</u>. You and we (the "Parties") agree, that if a Dispute arises between the Parties, upon demand by either Party, the Dispute will be resolved through the arbitration process as set forth in this section. A "Dispute is any unresolved disagreement between the Parties. It includes any disagreement relating in any way to this loan or related services, accounts or matters; to your use of any of our banking locations or facilities; or to any means you may use to access our services. It includes claims based on broken promises or contracts, torts, or other wrongful actions. It also includes statutory, common law, and equitable claims. "Disputes" include disagreements about the meaning or application of this Arbitration Agreement.

ECF No. [17-8] at 9.

In response, Abellard does not dispute that he provided his telephone number for contact in conjunction with his Wells Fargo accounts, or that he stopped making payments. Abellard also

---

[1] Abellard's credit card account was governed by two agreements—from June, 2016 to August, 2017, and August, 2017 to present. *See* ECF No. [17-1], ¶¶ 7, 9. However, the arbitration clauses are identical in both. *Compare* ECF No. [17-4] at 14 and ECF No. [17-5] at 12.

does not dispute that he entered into the Personal Loan Agreement and Consumer Credit Card Customer Agreement, which contain arbitration clauses. Indeed, Abellard's contention is that his claims fall outside the scope of the arbitration clauses because they do not sufficiently relate to the agreements. The Court disagrees.

First, Abellard does not dispute the validity of the arbitration provisions, both of which delegate the issues of arbitrability and enforceability to the arbitrator. "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010). However, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)) (alterations omitted). Here, the arbitration provisions state that they cover disagreements about the meaning or application of the arbitration agreements and disputes involving statutory claims. *See* ECF No. [17-4] at 14; ECF No. [17-8] at 9. As such, Abellard's contention is misplaced, and the very argument he makes against arbitration is a question that, pursuant to the agreements between the parties, must be determined in arbitration. *Jones v. Waffle House, Inc*., 866 F.3d 1257, 1269-71 (11th Cir. 2017); *see also Moses H. Cone*, 460 U.S. at 24-25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or allegations of waiver, delay, or a like defense to arbitrability.").

Second, even if Abellard's contention were properly decided by this Court, his reliance on *Gamble v. New England Auto Finance, Inc*., 735 F. App'x 664 (11th Cir. 2018) is misplaced.

Based upon *Gamble*, Abellard urges the Court to find that statutory claims, such as his TCPA claim, are non-arbitrable unless they are specifically contemplated by the relevant arbitration provisions. Abellard's argument fails for two reasons. First, the facts in *Gamble* are easily distinguished from the facts in this case. Significantly, the plaintiff in *Gamble* paid off her loan in full. As such, her relationship with the lender ended yet she began to receive text messages from the lender offering her a new loan. 735 F. App'x at 665. Here, Abellard does not dispute Wells Fargo's assertion that he stopped making payments on both his personal loan and credit card. Moreover, the offending calls were generated to the contact number provided for both of his Wells Fargo accounts. Second, the arbitration provisions both expressly include statutory claims, which would include both Abellard's TCPA and FCCPA claims. Accordingly, Abellard's claims must proceed through arbitration.

In the Motion, Wells Fargo also requests that the Court dismiss or stay this case pending arbitration. In response, Abellard argues that in the event that the Court compels arbitration, this case should be stayed and not dismissed because a stay is the more appropriate course of action. However, where the Court compels arbitration of all of the claims involved, the Court sees no benefit to a stay, as opposed to dismissal. *See Perera v. H&R Block Eastern Enterps., Inc.*, 914 F. Supp. 2d 1284, 1290 (S.D. Fla. 2012) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration.") (citations and quotations omitted). As such, the Court will dismiss this case.

In addition, Wells Fargo requests that the Court award the fees and costs for bringing the Motion, pursuant to Personal Loan Agreement and Consumer Credit Card Customer Agreement. In pertinent part, the agreements specify that "[i]f either [party] fails to submit to binding arbitration following lawful demand, the party so failing bears all costs and expenses incurred by

the other in compelling arbitration." ECF No. [17-4] at 14; ECF No. [17-8] at 9. In support of its request, Wells Fargo has provided evidence that its counsel made an arbitration demand to Abellard's counsel and that Abellard refused to submit his claims to arbitration. *See* ECF Nos. [17-9]-[17-13]. Abellard has not objected to Wells Fargo's request in his Response. Accordingly, Wells Fargo is entitled to recover $2,398.50 as the reasonable costs and attorney's fees incurred in filing the Motion.

## IV. CONCLUSION

For the foregoing reasons, the Motion, **ECF No. [17]**, is **GRANTED**, and Abellard's claims must proceed in arbitration. Abellard shall pay Wells Fargo **$2,398.50** in fees and costs incurred in filing the Motion. This case is **DISMISSED** and the Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 13, 2019.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record